IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RED REEF ALTERNATIVE INVESTMENTS, LLC and EMERGENT CAPITAL, INC.,[1] | ) Case No. 20- 12602 (___) |
| | ) |
| | ) Joint Administration Requested |
| Debtors. | ) |
| | ) |

**DECLARATION OF MIRIAM MARTINEZ, CHIEF FINANCIAL OFFICER,
IN SUPPORT OF DEBTORS' BANKRUPTCY PETITIONS AND FIRST DAY RELIEF**

I, Miriam Martinez, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am the Chief Financial Officer of Emergent Capital, Inc., one of the above-captioned debtors and debtors in possession ("Emergent"). Emergent is the sole member of Red Reef Alternative Investments, LLC ("Red Reef"), the other above-captioned debtor and debtor in possession. Emergent and Red Reef are referred to herein collectively, the "Debtors." As sole member, Emergent manages the affairs of Red Reef.

2.      In my capacity as an officer of Emergent, I oversee many aspects of the Debtors' business. I have more than 30 years' experience in the financial services industry. I joined Emergent in 2010 as Senior Vice President, Finance and Operations. I currently manage Emergent's and its direct and indirect subsidiaries' financial resources and functions, participate in strategic planning, and oversee operational departments, including human resources and servicing. Prior to joining Emergent, I served as Regional President and Chief Financial Officer

---

[1] The last four digits of each Debtor's taxpayer identification number are: Red Reef Alternative Investments, LLC (0302) and Emergent Capital, Inc. (3473). The location of the Debtors' service address for purposes of these cases is 1200 North Federal Highway, Suite 200, Boca Raton, FL 33432.

of Qimonda North America and was Vice President and Chief Financial Officer of Infineon

North America, a $1.5 billion U.S. subsidiary of German-based Infineon AG.  I also have held

several senior positions in accounting management for various U.S. entities of Siemens AG.  I

received a Bachelor of Business Administration in Accounting from Pace University and a

Master of Business Administration from Nova Southeastern University.

3.       I submit this declaration (the "Declaration") in support of the Debtors'

bankruptcy petitions and first day relief.  Except as otherwise indicated, all statements in this

Declaration are based upon my personal knowledge, my review of the Debtors' books and

records, relevant documents, and other information prepared or collected by the Debtors'

representatives, or my opinion based on my experience with the Debtors' operations and

financial condition.  In making my statements based on my review of the Debtors' books and

records, relevant documents, and other information prepared or collected by the Debtors'

representatives, I have relied upon these representatives accurately recording, preparing, or

collecting such documentation and other information.  I am authorized to submit this Declaration

on behalf of the Debtors.

4.       Part I of this Declaration describes the business of the Debtors and the

developments that led to their filing for relief under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code").  Part II sets forth the relevant facts in support of the joint

administration and cash management motions filed by the Debtors concurrently herewith in

support of these chapter 11 cases.  Capitalized terms not defined herein shall have the same

meanings as set forth in the respective motions.

5.      The ultimate goal of this case is to obtain confirmation of the *Debtor Emergent Capital, Inc.'s Chapter 11 Plan of Reorganization* (the "Plan"), which has been filed concurrently herewith.  The Plan has the support of a majority in principal amount of Emergent's secured and unsecured noteholder constituencies, as reflected in the restructuring support agreements attached hereto as **Exhibit A** and **Exhibit B** (the "Restructuring Support Agreements").  Aside from the agreed treatment of the noteholders' claims consistent with the terms of the Restructuring Support Agreements, the Plan unimpairs all other creditor claims against Emergent, if any.  Equity holders of Emergent, although impaired, also will receive distributions under the Plan.  It is Emergent's intent to proceed promptly towards confirmation and implementation of the Plan in accordance with the terms of the Restructuring Support Agreements, which may be terminated by the supporting noteholders if the Plan has not gone effective on or before December 31, 2020.

## PART I

## BACKGROUND

### A.      Emergent's Business

6.      Emergent is a holding company that, through its subsidiaries, owns a 27.5% equity investment in White Eagle Asset Portfolio, LP, a Delaware limited partnership ("White Eagle"), which itself was a wholly-owned indirect subsidiary of Emergent until August 2019.  White Eagle holds a portfolio of approximately 500 life insurance policies, also referred to as life settlements, having a face value of approximately $2.4 billion (the "White Eagle Portfolio").

7.      Emergent's existing common stock is publicly traded on the OTCQX market under the ticker symbol "EMGC".

8.      Emergent's principal asset is its indirect minority interests in the White Eagle Portfolio.  The purpose of the Plan is to preserve and maximize the value of such interests for the benefit of all constituents of Emergent, while addressing Emergent's existing capital structure.

**B.      Corporate Structure of the Debtors**

9.      Emergent holds all of the equity interests in Red Reef, a Delaware limited liability company.  As addressed further below, 65% of Emergent's interests in Red Reef have been pledged to the senior secured noteholders.  Emergent is considering  its options with respect to Red Reef, pending the expiration of the bar date; hence, the Plan does not currently extend to Red Reef.

10.      Emergent holds all of the equity interests in OLIPP IV, LLC ("OLIPP"), a Delaware limited liability company, which holds all of the equity interests in Markley Asset Portfolio, LLC ("Markley"), a Delaware limited liability company.

11.      Markley holds Emergent's interests in Lamington Road Designated Activity Company ("Lamington"), which is an Irish Section 110 Company.  Lamington is not a traditional corporation or a private limited company, and it issues different types of securities than a corporation or private limited company would issue.  Lamington holds 27.5% of the equity interests in White Eagle, which are designated as the Class B Units in White Eagle.

12.      As holding companies, the Debtors have no employees or operations. Emergent's operating subsidiary is non-debtor Imperial Finance & Trading, LLC ("Imperial

4

Finance"), which entity employs staff, leases office space, contracts with outside vendors, and otherwise manages the Debtors' business affairs. The Debtors' administrative expenses during the course of the chapter 11 cases, including any allowed professional fees incurred by the estates, will be paid through Imperial Finance.

13.     Attached hereto as **Exhibit C** is an organizational chart of Emergent and its subsidiaries.

**C.      Prepetition Capitalization and Indebtedness of Emergent**

14.     On July 28, 2017, Emergent consummated a series of integrated transactions to effect a recapitalization (the "Recapitalization"), pursuant to which (i) Emergent issued and sold 115,000,000 shares (the "Recapitalization Shares") of common stock, (ii) Emergent issued warrants (the "Recapitalization Warrants") to purchase up to an aggregate of 42,500,000 shares of common stock at an exercise price of $0.20 per share (the "Warrant Shares"), of which 17,500,000 Recapitalization Warrants were immediately vested (and constitute the Warrants) and 25,000,000 Recapitalization Warrants remain unvested (the "Unvested Warrants"), (iii) investors, which included some of the investors that acquired Recapitalization Shares and Recapitalization Warrants, purchased all of Emergent's then-outstanding 15% senior secured notes due 2018 and amended and restated the relevant indenture to reduce the interest rate to 8.5% and increase the issuable principal amount to $40,0000,000, as reflected by the 8.5% Senior Secured Notes due 2021 (the "Senior Notes") issued pursuant to that certain *Amended and Restated Indenture*, dated as of July 28, 2017 (as amended, the "Senior Notes Indenture"), between Emergent and Wilmington Trust, National Association, as trustee, and (iv) the holders of substantially all of Emergent's then-outstanding 8.5% convertible notes

5

due 2019 exchanged such notes for $75,836,966 principal amount of 5.0% Senior Unsecured

Convertible Notes due 2023 (the "Convertible Notes") issued pursuant to that certain *Indenture*

dated as of July 28, 2017 (as amended, supplemented or otherwise modified from time to time,

the "Convertible Notes Indenture") between Emergent and U.S. Bank, National Association, as

trustee.

15.     The Senior Notes are secured by, among other things, a pledge of 65% of

Emergent's interests in Red Reef and OLIPP and a lien on Emergent's cash in a controlled

account at First National Bank of Central Texas ("First National Bank").

16.     In connection with the Recapitalization, Emergent's board of directors was

reconstituted to consist of six (6) directors, five (5) of whom were designees of investors in the

Recapitalization pursuant to board designation agreements.  Emergent's board has since been

expanded to consist of nine (9) directors.

17.     In August 2017, Emergent issued and sold an additional 12,500,000 shares

of common stock and $5,000,000 principal amount of Senior Notes to a new investor.  In

December 2018, Emergent issued and sold $5,667,000 principal amount of Senior Notes and

amended and restated the Senior Notes Indenture to (i) increase the principal amount issuable

thereunder to $70,000,000 and (ii) permit payable-in-kind (PIK) interest to be paid on principal

amounts designated by holders, if so elected by Emergent, and with all future purchases of

Senior Notes subject to PIK interest payments, providing that PIK interest payments carry an

additional 3% interest.  In January and February 2019, Emergent issued and sold an aggregate of

$2,967,000 of additional Senior Notes.

18.     As of the Petition Date, 2020, Emergent has no less than $48,758,887 of outstanding principal amount of Senior Notes and $67,836,966 of outstanding principal amount of Convertible Notes, plus accrued and unpaid interest, fees, and expenses.  Emergent has no other material debt, aside from projected federal income tax obligations not yet due and a disputed litigation claim.

D.     **Prior Chapter 11 Proceedings of White Eagle**

19.     On November 14, 2018, Lamington and White Eagle General Partner, LLC, Emergent's wholly-owned indirect Delaware subsidiary ("WEGP"), filed voluntary chapter 11 petitions for relief in this Court.  At the time, Lamington was the limited partner and owned 99.99%, and WEGP was the general partner and owned 0.01%, of White Eagle.  In its capacity as general partner, WEGP managed the affairs of White Eagle.  On December 13, 2018, White Eagle filed a voluntary chapter 11 petition for relief in this Court.  The cases were pending before Judge Kevin Gross.

20.     The foregoing chapter 11 cases were filed in order to protect the White Eagle Portfolio, which was pledged as collateral under a revolving credit agreement between White Eagle and an affiliate of Beal Bank (the "White Eagle Revolving Credit Facility").  The terms of the White Eagle Revolving Credit Facility were onerous and constricted Emergent's access to its main source of revenue and cash flow.

21.     As part of its plan of reorganization and its exit from bankruptcy, White Eagle, along with Emergent, Lamington and WEGP, entered into the White Eagle Transaction (defined below) on August 16, 2019.  Subsequently, on September 16, 2019, the Court entered

an order and final decree closing White Eagle's chapter 11 case.  On November 25, 2019, the

Court entered an order and final decree closing Lamington's and WEGP's chapter 11 cases.

22.    On August 16, 2019, White Eagle, Emergent, Lamington and WEGP

entered into a subscription agreement (the "<u>Subscription Agreement</u>") with Palomino JV, L.P.

("<u>Palomino</u>"), pursuant to which 72.5% of the limited partnership interests in White Eagle,

consisting of all of the newly issued and outstanding Class A and Class D interests, were sold to

Palomino (collectively, the "<u>White Eagle Transaction</u>") for an aggregate purchase price of

approximately $366,200,000 and $8,000,000 for the Class A and Class D interests, respectively.

Pursuant to the Subscription Agreement, Lamington received 27.5% of the limited partnership

interests of White Eagle, consisting of all of the newly issued and outstanding Class B interests

in exchange for all of its previously owned White Eagle limited partnership interests.  The

limited partnership agreement of White Eagle was amended and restated to provide for the new

classes of interests and their terms. The proceeds of the White Eagle Transaction, together with

other funds of White Eagle, were used to satisfy in full the White Eagle Revolving Credit

Facility, which was terminated and the underlying collateral, consisting of the White Eagle

Portfolio, was released.

E.    **Events Leading to the Commencement of the Bankruptcy Cases**

23.    As a result of the White Eagle Transaction, Emergent has been able to

participate in proceeds of maturities from the White Eagle Portfolio without the burdens of

excessive bank debt and, as a result, Emergent's financial performance has markedly improved.

However, Emergent continues to be burdened by approximately $117 million of noteholder

obligations that must be serviced on a going forward basis.  In order to address Emergent's

8

liquidity needs over the foreseeable future, it is the Emergent's business judgment that a restructuring should be effectuated.

24.     Over the course of over a year, Emergent and its representatives heavily negotiated the terms of a possible restructuring, which is now memorialized in the Restructuring Support Agreements and the proposed Plan.  At least a majority in principal amount of the holders of the Senior Notes and the Convertible Notes are parties to the Restructuring Support Agreements and support the Plan.  Emergent expects that additional noteholders may join the supporting noteholders leading up to confirmation of the Plan.  As required by the Restructuring Support Agreements, it is Emergent's goal to obtain confirmation of the Plan and to exit bankruptcy by December 31, 2020.

25.     In accordance with the Restructuring Support Agreements and as reflected in the Plan, Emergent's restructuring will be accomplished through Lamington, an Irish indirect subsidiary of Emergent.  Lamington is located in a tax-favorable jurisdiction.  Emergent proposes to transfer the ownership of Lamington directly to its security holders by having Lamington issue new securities to such holders in exchange for Emergent's securities currently held by such security holder.  Emergent's securities would be cancelled and ultimately Emergent and its subsidiaries, other than Lamington and Lamington's subsidiaries, would be liquidated. As a result, current security holders of Emergent, including equity holders, would become security holders of Lamington and/or a grantor trust, with such securities, which would be listed for trading on a public stock exchange deemed suitable for this purpose, representing ownership of the same assets as before the restructuring.

9

**F.**      **Goals of Emergent's Chapter 11 Case**

26.      Consistent with the terms of the Restructuring Support Agreements, Emergent intends to move promptly towards confirmation of the Plan and to exit bankruptcy as quickly as possible in order to minimize any potential adverse impact of the bankruptcy filing on Emergent's assets.  Emergent believes that the proposed Plan is in the best interests of Emergent's creditors and will maximize the value of its estate.

**PART II**

**FIRST DAY RELIEF**

**A.**      **Joint Administration Motion**

27.      Concurrently herewith, the Debtors have filed the *Debtors' Motion for Joint Administration of Related Chapter 11 Cases for Procedural Purposes Only* (the "Joint Administration Motion").  I have reviewed the Joint Administration Motion.  The facts stated therein are true and correct to the best of my knowledge, information, and belief.

28.      Joint administration is warranted in these chapter 11 cases because (a) the Debtors are affiliates of each other and (b) such administration will ease the administrative burden on the Court and other parties.  The Debtors are under common ownership and management.  They also share certain creditors and parties in interest.  As a result, joint administration will prevent duplicative efforts and unnecessary expenses, without any risk of prejudice.

**B.**      **Cash Management Motion**

29.      Concurrently herewith, Emergent has filed the *Debtor Emergent Capital, Inc.'s Motion for Order Authorizing: (a) Continued Maintenance of Existing Deposit Account*

10

*and (b) Limited Waiver of Section 345(b) Deposit and Investment Requirements, and (c)*

*Granting Related Relief* (the "Cash Management Motion").  I have reviewed the Cash

Management Motion.  The facts stated therein are true and correct to the best of my knowledge,

information, and belief.  I believe that the type of relief sought in the Cash Management Motion

is necessary and appropriate to allow Emergent to efficiently move towards confirmation of the

Plan and a prompt exit from bankruptcy.

30.     As of the Petition Date, Emergent maintained one (1) deposit account

(ending -7801) (the "Account") at First National Bank.  The Account is subject to a control

agreement in favor of the indenture trustee for the Senior Notes.  The Account holds

approximately $12.7 million, which originated from the proceeds of a litigation settlement.

Emergent does not expect to collect any funds in the Account on a postpetition basis, other than

accruing interest on a monthly basis.

31.     Emergent will not use any funds in the Account during the course of this

case and outside of a confirmed plan, except to the extent that First National Bank applies

amounts in the Account to satisfy outstanding bank charges and fees.  Emergent has no

employees and its ordinary course obligations are funded through non-debtor Imperial Finance, a

direct subsidiary of Emergent.  Imperial Finance will continue to pay Emergent's administrative

obligations during this case.  In the interests of efficiency and given the controlled status of the

Account, Emergent proposes to maintain the Account during the course of its case, rather than

opening a new debtor-in-possession account.

I declare under penalty of perjury under the United States of America that the

foregoing is true and correct.

Executed this ___ day of October 2020 at Boca Raton, Florida.

_____
Miriam Martinez

DOCS_SF 102916 3 23629-004