IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RED REEF ALTERATIVE INVESTMENTS, | ) | |
| and EMERGENT CAPITAL, INC., | ) | Case No. 20-12602 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| In re: | ) | |
| | ) | |
| IMPERIAL PREMIUM FINANCE, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 20-12694 (BLS) |
| | ) | |

**DECLARATION OF ALLAN J. POHL IN OPPOSITION TO DEBTORS' MOTION
TO ESTIMATE POHL LITIGATION CLAIMS FOR DISTRIBUTION PURPOSES**

COMES NOW, ALLAN J. POHL, individually, as Representative of Phyllis Pohl, and as Trustee of the Phyllis Pohl Irrevocable Trust, and pursuant to 28 U.S. § 1746, states and declares:

1. I am an individual over the age of twenty-one, and I make this Declaration based on my personal knowledge.

2. I am one of the creditors in this action, along with my mother Phyllis Pohl ("Phyllis"), the Phyllis Pohl Irrevocable Trust ("Pohl Trust") and my sister Kimberly Sheris ("Kimberly") (collectively, Plaintiffs"). I make this Declaration in opposition to the Motion to Estimate filed by Debtor Emergent Capital, Inc. ("Emergent").

3. My father Harvey Pohl and my mother Phyllis Pohl were married to each other for over 40 years. They raised two children, myself and my sister, and had extremely successful careers in New York as an educator and accountant, respectively. Following their retirement, my parents retired to Palm Beach County and lived in the home they purchased in Wellington, Florida in 1999.

4. My father Harvey was diagnosed with Parkinson's disease and in failing health in 2007, and as part of their estate and tax planning, my parents wanted to leave an inheritance for me and Kimberly.

5. In late 2007, I had a telephone conversation with my father while I was located in California and he was located in Florida. On that call, my father stated to me that one of his golfing buddies had told him about a funded life insurance program and referred my parents to WealthModes, LLC ("WealthModes"), an insurance agency.

6. My father told me that my mother had applied for a very large life insurance policy on my mother's life that would be funded with a premium finance loan, and that my parents were extremely excited about the insurance policy because it would leave me and my sister Kimberly with a substantial life insurance benefit as part of their estate and tax planning.

7. My father told me that he had met and spoken with an insurance agent at Wealth Modes named Ernest Madera ("Madera") and that it was his and my mother's plan and intent to purchase the life insurance policy, that the monies required to pay the policy's insurance premiums until my mother's passing would be paid by the lender, Imperial Premium Finance ("Imperial"), that the loan would be paid back from the policy's death benefit when my mother passed, and that me and my sister Kimberly would be the beneficiaries of the policy and split the remaining death benefit after the loans were paid off.

8. During the course of the Pohl State Court Litigation I have learned that Mr. Madera's representations were false and inaccurate. Instead, the lender Imperial arranged and executed a sham non-recourse premium finance loan that matured in just two years and that was designed and intended to facilitate Imperial's illegal premium financing scheme.

9. My parents did not apply for the life insurance policy from Lincoln Benefit in exchange for any fee or compensation paid by Imperial or WealthModes or with any intent to

profit from the future sale of the policy. Rather, my parents had an insurable interest on the life of my mother and purchased the policy for estate and tax planning purposes with the plan and intent leave a substantial death benefit for me and Kimberly.

10. In connection with the purchase and financing of the life insurance policy, Imperial prepared a trust instrument that created the Phyllis Pohl Irrevocable Trust ("Pohl Trust") to serve as the owner and intended beneficiary of the insurance policy, with me and Kimberly named as the beneficiaries of the Pohl Trust who would receive the insurance policy's remaining death benefit upon my mother's passing. I received a December 17, 2007 letter from WealthModes providing me with a copy of the trust agreement, a true and authentic copy of which is designated as Exhibit 28 to the Pohl Creditors' Response to Motion to Estimate ("Pohl Response").

11. Imperial choose and directed the appointment of Thomas Mahoney, Jr. as the original trustee of the Pohl Trust. I have never met or spoken with Mr. Mahoney, and to the best of my knowledge my parents Harvey and Phyllis never met or spoken with Mr. Mahoney. Rather, Imperial controlled and directed the actions of Mr. Mahoney at all times.

12. In January 2008, Defendant Lincoln Benefit ("Lincoln Benefit") approved and issued a life insurance policy with a face amount of $9 million, Policy No. 01N1364514, with Phyllis Pohl as the insured and the Pohl Trust as the owner and beneficiary of the Policy ("the Pohl Policy"). My understanding at that time was that me and Kimberly were the sole designated beneficiaries of the Pohl Trust, which was the designated beneficiary of the Pohl Policy.

13. During a February 28, 2008 meeting with my parent's financial advisors, my mother identified the $9 million Lincoln Benefit life insurance policy as part of her assets. A true and authentic copy of my mother's notes is designated as Exhibit 30 to the Pohl Response. I have acquired an extensive knowledge and familiarity with my mother's handwriting over the course of many years, and I recognize the handwriting on the notes as my mother's handwriting.

14. On or about March 11, 2008, the Bank of Utah was engaged by Imperial to serve as a co-trustee of the Pohl Trust. Imperial chose and directed the appointment of the Bank of Utah as the co-trustee of the Pohl Trust. I have never met or spoken with anyone from the Bank of Utah, and to the best of my knowledge my parents Harvey and Phyllis never met or spoke with anyone from the Bank of Utah Mr. Mahoney. Rather, Imperial controlled and directed the actions of the Bank of Utah at all times.

15. As a beneficiary of the Pohl Trust, I was provided by Wealth Modes and Imperial with certain documents to sign relating to the financing of the Pohl Policy. However, I was never provided with, never executed and never reviewed the Loan Agreement or Promissory Note between Imperial and the Pohl Trust. For example, one of the documents that Imperial directed and required me to execute as a beneficiary was a Security Agreement, however, while a Loan Agreement is referenced it was not attached to or provided with the Security Agreement.

16. I had no knowledge regarding the actual terms and conditions of the premium financing loan that was misrepresented to my parents and the Pohl Trust by Imperial. The Pohl Trust's co-trustees, Mr. Mahoney and Bank of Utah, never communicated or met with me or my sister to explain the terms and conditions of Imperial's premium financing loan or any of the documents that I was required to sign.

17. In addition, Imperial required the Pohl Trust and its beneficiaries to execute a Hold Harmless Agreement. A true and authentic copy of the letter I received from WealthModes attaching the executed Hold Harmless Agreement is attached as Exhibit 31 to the Pohl Response.

18. My mother Phyllis Pohl was diagnosed with Alzheimer's Disease in 2016, and I have assisted in managing her affairs since then pursuant to a durable power of attorney. In my capacity as my mother's legal representative and attorney-in-fact, and in connection with the litigation with the Debtors, I have become knowledgeable concerning my parents' net worth, assets

and financial circumstances dating back to 2007. During the period January 2007 to April 2011, my parents had a net worth consisting of investment accounts, retirement and pension plans, real estate and other assets in excess of $5,000,000.00.

19. My father Harvey Pohl passed away at the Veterans Affairs Medical Center in West Palm Beach, Florida in April 2011.

20. During the period April 2011 to the present date, my mother Phyllis has maintained a net worth consisting of investment accounts, retirement and pension plans, real estate and other assets in excess of $5,000,000.00.

21. During the period January 2008 to the present date, I never received any notice of default under any of the Imperial loan and financing agreements, including the Security Agreement that I signed. I have never received, either individually or as the current trustee of the Pohl Trust, any bills or invoices from Imperial or Emergent demanding the payment or repayment of any premium payments required or made on the Pohl Policy.

22. During the period January 2008 to May of 2016, I never received any notice of any issues or problems with the Pohl Trust or the Pohl Policy. I believed during this time period that the Imperial premium financing program was working in the manner represented to my parents by Imperial, that all required premiums on the Pohl Policy were being paid, the Pohl Trust still owned the Pohl Policy, and that me and my sister were still the beneficiaries to the Policy. I have never received, either individually or as the current trustee of the Pohl Trust, any bills or invoices from Imperial or Emergent demanding the payment or repayment of any premium payments required or made on the Pohl Policy.

23. In May 2016, my sister Kimberly visited my mother at her home in Florida and located a letter from LexServ, the company engaged by Defendants, and contacted LexServ to confirm that the Policy was in force and in good standing. She was shocked to discover for the

first time that the Trust no longer owned the policy, that the Policy was held by a new owner (whose identity LexServ refused to disclose), and that the Trust was no longer named as the beneficiary of the Policy. A true and authentic copy of the LexServ letter that my sister discovered in May 2016 is designated as Exhibit 27 to the Pohl Response. My sister contacted me with this information and I commenced an investigation and filed a complaint with the Florida Department of Financial Services in June, 2016. A true and authentic copy of my June 12, 2016 complaint letter is attached as Exhibit 32 to the Pohl Response. After numerous unsuccessful efforts to resolve the issue and recover the Pohl Policy, we filed a lawsuit against Imperial and Emergent in January, 2019.

24.     I have reviewed the Release and Relinquishment Agreement dated March 19, 2010 ("Release") attached to the Debtors' Motion to Estimate.

25.     I unequivocally attest that the alleged signature of "Allan J. Pohl" on the Release is not my true or authentic signature. I had no knowledge of the Release and I never signed the Release. I had never even seen or possessed the Release until it was produced by the Defendants in the Pohl State Court Litigation. I never had any discussions or meetings with Wilmington Trust, Emergent, Imperial or any of their affiliates relating to or concerning the Release.

26.     I further attest that the signatures of Harvey Pohl and Kimberly Pohl on the Release are also forgeries and not their true or authentic signatures. I am familiar with their authentic signatures which differ markedly from their forged signatures on the Release. Moreover, I have been informed by my sister Kimberly that her alleged signature on the Release is certainly a forgery and not her authentic signature.

27.     I had no knowledge of, and never consented to, the alleged release and relinquishment of the Pohl Trust's ownership of the Policy or my rights as a beneficiary under the Policy. I also never consented to or authorized the co-trustees of the Pohl Trust – Mr. Mahoney

and Bank of Utah – to execute and sign the Release or to consent to the Trust's relinquishment of its ownership of the Policy. I likewise never had any discussions or meetings with the co-trustees of the Pohl Trust – Mr. Mahoney and Bank of Utah – in which we either discussed the Release or in which myself, my mother Phyllis, my father Harvey or my sister Kimberly ever authorized or instructed the co-trustees to execute the Release on behalf of the Trust.

28. I have reviewed the change of ownership and beneficiary forms that Imperial caused to be submitted to Lincoln Benefit in 2010 and 2013. My family had no knowledge of, and did not consent to or authorize, the execution or submission of these Change Forms. The Pohl Trust's co-trustees, Thomas Mahoney and Bank of Utah, never contacted, met or discussed the Change Forms with me, my sister Kimberly or my parents.

I declare under penalty of perjury that the foregoing is true, correct and made in good faith.

Dated this 12th day of December, 2020.

_____
ALLAN J. POHL