IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| RED REEF ALTERATIVE INVESTMENTS, ) | |
| and EMERGENT CAPITAL, INC., ) | Case No. 20-12602 (BLS) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | |
| In re: ) | |
| ) | |
| IMPERIAL PREMIUM FINANCE, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | Case No. 20-12694 (BLS) |
| ) | |

**DECLARATION OF KIMBERLY SHERIS IN OPPOSITION TO DEBTORS' MOTION TO ESTIMATE POHL LITIGATION CLAIMS FOR DISTRIBUTION PURPOSES**

COMES NOW, KIMBERLY SHERIS, and pursuant to 28 U.S. § 1746, states and declares:

1. I am an individual over the age of twenty-one, and I make this affidavit based on my personal knowledge.

2. I am one of the creditors in this action, along with my mother Phyllis Pohl ("Phyllis"), the Phyllis Pohl Irrevocable Trust ("Pohl Trust") and my brother Allan Pohl (collectively, "Pohls"). I make this Declaration in support of the Pohls' opposition to the Debtors' Motion to Estimate Pohl Litigation Claims.

3. I am a resident of Madison, New Jersey. I have resided in New Jersey since March 2017. From 2007 to March 2017 I resided in New York.

4. In late 2007, I traveled to Florida to visit my parents, Harvey Pohl and Phyllis Pohl, at their residence in Wellington, Florida. During the visit, my mother Phyllis Pohl told me that she had been undergoing extensive medical testing in order to qualify for a large life insurance policy, and that she was very excited that she had passed her medical examinations and been approved for the policy. This conversation occurred at my parent's kitchen.

5.  When I asked my father about the insurance policy, he stated to me that it was his and my mother's intent to purchase a large life insurance policy ensuring my mother's life, that they intended to a pay a certain amount of money up front, that Imperial Premium Finance would then take over and pay the rest of the payments until my mother's passing, and that my brother Allan Pohl and I would receive and split the remaining death benefit from the policy monies 50-50% after the loans by Imperial were paid back.

6.  In January, 2008, Defendant Lincoln Benefit Lincoln Benefit ("Lincoln Benefit") approved and issued a life insurance policy with a face amount of $9 million, Policy No. 01N1364514, with Phyllis Pohl as the insured and the Pohl Trust as the owner and beneficiary of the Policy ("the Policy"). Allan and I are the sole designated beneficiaries of the Pohl Trust.

7.  In connection with the purchase of the Pohl Policy, I was asked to execute certain papers that I understood and was told were required because I was a beneficiary of the Pohl Trust and thus the Pohl Policy. I was never provided with a copy of the Loan Application and Agreement or Promissory Note executed by the Pohl Trust, and the trustees of the Pohl Trust never disclosed or explained those documents to me.

8.  Following my mother Phyllis's formal diagnosis of Alzheimer's in 2016, I visited my mother in Florida in May, 2016. While reviewing her financial affairs and records I located a letter at my mother's home from a company named LexServ, which I later learned was engaged to periodically obtain and update Phyllis Pohl's contact and health information. I contacted LexServ to check on the status of the Policy and confirm that the Policy was in force and in good standing. I was shocked to discover for the first time that the Pohl Trust no longer owned the policy, that the Policy was held by a new owner (whose identity LexServ refused to disclose to me), and that the

Pohl Trust was no longer named as the beneficiary of the Policy. A true and authentic copy of the LexServ letter that I discovered in May 2016 is designated as Exhibit 27 to the Pohl Response.

9. As a result of this discovery, we filed a complaint with the Florida Department of Financial Services in June, 2016 and subsequently filed a lawsuit against Imperial and Emergent in January, 2019.

10. I have reviewed the Release and Relinquishment Agreement dated March 19, 2010 ("Release") attached to Emergent's Motion.

11. I unequivocally attest that the alleged signature of "Kimberly Sheris" on the Release is not my true or authentic signature. I had no knowledge of the Release and I never signed the Release. I had never even seen or possessed the Release until it was produced by the Defendants in this action. I never had any discussions or meetings with the trustees of the Pohl Trust (Thomas Mahoney and Bank of Utah), Imperial, Emergent or any of their affiliates relating to or concerning the Release.

12. Further, I had no knowledge of, and never consented to, the alleged relinquishment of the Pohl Trust's ownership of the Policy or my rights as a beneficiary under the Policy. I also never consented to or authorized the former co-trustees of the Pohl Trust – Thomas Mahoney, Jr. and Bank of Utah – to execute and sign the Release or to consent to the Trust's relinquishment of its ownership of the Policy. I likewise never had any discussions or meetings with the former co-trustees of the Pohl Trust – Mr. Mahoney and Bank of Utah – in which we either discussed the Release or in which myself, my mother Phyllis, my father Harvey or my brother Allan ever authorized or instructed the co-trustees to execute the Release on behalf of the Pohl Trust.

I declare under penalty of perjury that the foregoing is true, correct and made in good

faith.

Dated this 11th day of December, 2020.

_____
KIMBERLY SHERIS